QUEE DRUG CO. v. PLAUT et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

CHATTEL MORTGAGES— CORPORATIONS—AMOUNT OF MORTGAGE — ASSENT OF STOCKHOLDERS.

Under Gen. Laws, c. 36, § 2, providing that a stock corporation shall not have power to mortgage its property, in excess of its paid-up capital stock, without the consent of two-thirds of the stockholders expressed in writing and filed in the office of the clerk or register of the county where it has its principal place of business, or given by a vote of the stockholders at a special meeting, and a certificate thereof filed and recorded, a chattel mortgage given by a corporation and executed by its president to secure a debt owing by him and his wife for an amount in excess of its capital stock is void, where the consent of the stockholders has not been given and recorded, though the president and his wife owned all the stock, and the mortgagee held 55 per cent. of it as collateral security for the debt secured by the mortgage.

Appeal from special term, Kings county.

Action by Quee Drug Company against Albert Plaut and another to cancel and annul a chattel mortgage. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Benjamin Estes, for appellants.
Henry L. Brant, for respondent.

WOODWARD, J. This is an equitable action, and the facts developed on the trial show that prior to the 11th day of February, 1898, John Quee was the owner of a drug store at Bath Beach, and that either he or his wife, Ida L. Quee, owned another store on Third avenue, in Brooklyn, the business of both places being conducted by John Quee, in so far as it related to the defendants at least. The defendants were wholesale druggists, and during the time that John Quee was conducting the two stores mentioned they sold goods to him amounting in the aggregate to about $1,700 above the amounts paid upon the account at various times. Quee appears to have been slow in making payments, and the defendants at intervals made pressing demands upon him for settlement, resulting in John Quee and Ida L. Quee giving the defendants their promissory notes for the amount due. These notes remained unpaid, and the defendants continued to press for their money. John Quee finally hit upon the plan of organizing the Quee Drug Company, the plaintiff in this

action, and there was an understanding, subsequently carried out, that the defendant should be given a majority of the stock of this corporation as collateral security for the indebtedness of John and Ida L. Quee. The corporation was organized with a capital stock of $1,000, divided into 100 shares, of $10 each, of which 50 shares were issued to John Quee, 45 shares to Ida L. Quee, and 5 shares to one Charles W. Bouton, who appears to have been merely an accommodation holder of the stock for the purpose of meeting the requirements of the statute. In consideration of this stock, the two drug stores were turned over to the corporation immediately upon its organization, on the 11th day of February, 1898, and on the 14th day of February, three days later, Bouton transferred his certificates of stock in blank to John Quee, who on the same day assigned them, together with his 50 shares, to the defendants as collateral security, leaving only 45 shares of the stock in the control of the Quees. Subsequently, and in April, 1898, the plaintiff in the meantime having purchased goods in the name of the Quee Drug Company to the value of about $70, which remained unpaid, a note was given to the defendants, signed by the "Quee Drug Company, John Quee, Prest.," which included the amount of the notes and other individual indebtedness of John and Ida L. Quee, as well as the indebtedness of the Quee Drug Company, for the sum of $1,770.60. A chattel mortgage of even date was made and executed by the "Quee Drug Company, per John Quee, Prest.," to the defendants, and these evidences of indebtedness were delivered without the surrender of the individual notes of John and Ida L. Quee. Later, under a bill of sale, the defendants sold the Bath Beach store, realizing $1,330; and it appears from the pleadings that the stock of the Quee Drug Company, assigned as collateral security for the notes of John and Ida L. Quee, were sold, and the proceeds ($412.50) applied upon the indebtedness. It thus appears that the defendants have recovered $1,742.50 of the indebtedness, and they in their answer "hereby offer to cancel the said mortgage and note upon payment of the balance due them on the same." There would seem to be no question that the chattel mortgage is of no force or effect under the provisions of section 2 of chapter 36 of the General Laws, it being conceded that no written consents have been filed. We have examined the exceptions taken to the admission or rejection of evidence, and do not find reversible error.

The judgment appealed from should be affirmed, without costs. All concur.